UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASSOCIATED MACHINE TOOL TECHNOLOGIES, | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:15-CV-2755 |
| DOOSAN INFRACORE AMERICA, INC., *et al*, | § § § § | |
| Defendants. | § § | |

## ORDER AND OPINION

Pending before the Court are Defendant Ellison Technologies, Inc.'s ("Ellison's") Motion for Judgment on the Pleadings (Document No. 54) and Defendant Doosan Infracore America, Inc.'s ("Doosan's") Motion for Judgment on the Pleadings. (Document No. 55). Plaintiff Associated Machine Tool Technologies ("AmTTech") has filed responses (Document Nos. 57, 58) and Defendants each filed a Reply. (Document Nos. 59, 60). Having considered these filings, the facts in the record, and the applicable law, the Court concludes that Defendants' Motions for Judgment on the Pleadings (Document Nos. 54, 55) will be granted.

**Background**

Plaintiff AmTTech and Defendant Doosan have been in business for the past 25 years, during which AmTTech has been "primarily engaged in the business of selling and servicing machine tools to end users of the equipment." (Document No. 1-3 at 5). During this time AmTTech has had agreements with Doosan as an authorized dealer of their equipment, the most recent being an agreement dated February 10, 2009 (the "Agreement"). *Id*. at 6. The Agreement states that "[e]ither party may terminate this Letter of Understanding, at any time for any reason

whatsoever, by giving the other party at least 30 days' prior written notice sent electronically or by any delivery service company." (Document No. 25-1 at 18). On August 21, 2015, "Doosan informed AmTTech that it would terminate the Agreement effective October 20, 2015[1]" and that it would be replacing AmTTech with Ellison as its dealer in Texas, because Doosan chose to "modify[] its business model through a realignment and consolidation of its distributor territories and network . . . accomplishing this by combining multiple smaller territories with several distributors into much larger territories with one distributor." (Document No. 1-3 at 10-11) (citing Exhibit C of Document No. 1-4).

Due to this termination, AmTTech filed suit in September 2015, claiming Doosan violated the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act (the "Act") of Texas Business and Commerce Code § 57.001, et seq., by terminating its agreement with AmTTech and by substantially changing its agreement with AmTTech. (Document No. 1-3 at 10-15). AmTTech also asserted claims of breach of contract, civil conspiracy, and deceptive trade practices, as well as a claim for declaratory judgment against Doosan. *Id*. at 15-19.[2] AmTTech asserted civil conspiracy and tortious interference claims against Ellison. *Id*. In its Answer, Doosan asserted a counterclaim against AmTTech requesting a declaratory judgment that the Act does not apply to the Agreement. (Document No. 9 at 18).[3]

On October 19, 2015, AmTTech requested this Court grant an emergency preliminary injunction (Document No. 13) preventing Doosan from terminating the Agreement. In their responses, Defendants argued that the claims against them were not likely to succeed, largely because imposing liability under the Act (which became effective in 2012) would be an

---

[1] This gave AmTTech 60 days' notice of termination, more than required under the Agreement.
[2] Doosan mentions a possible claim of tortious interference against it (Document No. 55 at 2 n.2), but the portion of the complaint relating to this claim only refers to actions by Ellison. (Document No. 1-3 at 19).
[3] Doosan does not refer to this counterclaim in its Motion for Judgment on the Pleadings. (Document No. 55). Therefore it remains pending.

unconstitutionally retroactive application of the law to the Agreement (entered into in 2009). (Document Nos. 24, 25). On November 24, 2015, this Court issued an Order and Opinion (Document No. 28) denying the preliminary injunction and holding that retroactive application of the Act to the Agreement would be unconstitutional under Texas law. In its Order, the Court also found an insufficient likelihood of success required to issue an injunction based upon AmTTech's remaining claims.

Following the denial of Plaintiff's request for an injunction, Plaintiff filed a Motion for Certification and Entry of Final Judgment (Document No. 43) regarding its claims under the Act and its declaratory judgment claim, stating that "[a]lthough technically only a ruling on likelihood of success, the Court's legal conclusion is the practical equivalent of a summary judgment on AmTTech's two causes of action under the Act." *Id*. at 1-2. The Court denied that motion, finding that judicial administrative interests and equities weighed against certification. (Document No. 51). Now each Defendant has filed a Motion for Judgment on the Pleadings, generally arguing that the Court's ruling on the preliminary injunction bars AmTTech from succeeding on its claims. (Document Nos. 54, 55).

**Standard of Review**

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313 n.8 (5th Cir. 2002). A Rule 12(c) motion is intended to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking at the substance of

the pleadings and any judicially noticed facts. *Id.* at 313. The Court must decide whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)). The pleadings should be construed liberally, and judgment on the pleadings should be granted only if there are no disputed issues of fact and only questions of law. *Hughes,* 278 F.3d at 420. All well-pleaded facts should be viewed in a light most favorable to the plaintiff. *Id*.

**Discussion**

*Claims against Doosan*

(1) Claims under the Act

Plaintiff's causes of action under the Act include "unlawful termination without good cause" and "a substantial change of the dealer agreement." (Document No. 1-3 at 10-15). Doosan argues that it is entitled to judgment on the pleadings for Plaintiff's claims under the Act, as the Court has already ruled that it would be unconstitutional to retroactively apply the Act to the Agreement. (Document No. 55 at 5-6). The Court agrees; when considering Plaintiff's likelihood of success on these claims in its previous Order and Opinion, the Court unequivocally found that the Act cannot apply retroactively to the Agreement. (Document No. 28 at 11). Plaintiff itself later argued that this was the "practical equivalent of a summary judgment" on its claims under the Act (Document No. 43 at 1-2), yet now makes the contrary argument that judgment on the pleadings should not be granted. (Document No. 58).

Plaintiff first argues again that the Act applies to Doosan's termination of the Agreement. *Id*. at 2-4. The Court has already ruled against this argument, and will not reiterate its reasoning. (*See* Document No. 28). Then Plaintiff argues that the Court must presume that the Act is

constitutional, and that Doosan bears the burden of demonstrating otherwise. (Document No. 58 at 4). Neither of these affects the Court's prior decision; the Court still believes that applying the Act would be unconstitutional under the *Robinson* factors. Plaintiff then cites cases relating to statutes passed by Congress, as well as a case discussing Louisiana law.[4] *Id*. at 5. None are directly applicable to this case, and do not change the Court's prior decision. Furthermore, under the law of the case doctrine, the Court's decision "should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citations omitted).[5] As the Court has found that the Act cannot apply to the Agreement, Doosan is entitled to judgment on the pleadings for Plaintiff's claims under the Act.

(2) Breach of contract

In its previous discussion of this claim the Court stated:

> "To prevail on a breach-of-contract claim, it must be proven that (1) a valid contract between plaintiff and defendant existed, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff sustained damages as a result of the breach." *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 150 (Tex. App.—Houston (1st District) 2005) (citation omitted). Plaintiff will likely be unable to demonstrate the breach of contract prong. Plaintiff alleges that "Doosan breached the Agreement with AmTTech by attempting to terminate the relationship with AmTTech under the terms of the August 21, 2015 letter" (Document No. 1-3 at 16). However, as described above, the Agreement contained a provision allowing for termination with 30 days' written notice (Document No. 25-1 at 18). The evidence demonstrates that Doosan sent a letter on August 21, 2015, terminating the Agreement effective October 20, 2015 (Document No. 1-3 at 15). By giving Plaintiff 60 days' notice of termination, Doosan was within its rights under the Agreement, making it unlikely that Plaintiff will be able to succeed on its breach of contract claim.

(Document No. 28 at 11). Therefore Doosan argues that, "[b]ecause the Court has already found

---

[4] The Court already explained why *Northshore Cycles, Inc. v. Yamaha Motor Corp., U.S.A.* 919 F.2d 1041 (5th Cir. 1990) does not apply to this case. (Document No. 28 at 8).

[5] AmTTech also argues generally that "[t]he Court must construe the pleadings liberally and view all facts and inferences in a light most favorable to AmTTech." (Document No. 58 at 2). However the relevant *facts* are undisputed; AmTTech's arguments only relate to the *legal* issue of whether the Act can apply. The Court has already made a determination on this question of law, and viewing the facts in AmTTech's favor does not change that ruling. *See Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) ("[J]udgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.").

that Doosan terminated AmTTech within its rights under the Agreement, AmTTech cannot sustain a claim that Doosan breached the Agreement, and Doosan is entitled to judgment on the pleadings on the breach of contract claim." (Document No. 55 at 6). The Court agrees. It is clear from the pleadings that Doosan did not violate the Agreement; therefore Doosan is entitled to judgment on the pleadings on this claim.[6]

 (3) Civil conspiracy

Doosan asks for judgment on the pleadings regarding this claim, based upon the Court's prior holding that conspiracy to breach a contract is not actionable under Texas law. *Id*. at 6-7. In its prior discussion of the claim the Court stated:

> Plaintiff alleges that "Defendants engaged in a civil conspiracy with each other to relating to [*sic*] the replacement of Doosan's North American exclusive marketing and distribution rights. All Defendants have been conspiring to unlawfully breach AmTTech's contract." *Id*. [Document No. 1-3] at 17. However, as noted by Defendant Ellison, "a conspiracy to breach a contract is not actionable under Texas law." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003) (citing *Grizzle v. Texas Comm. Bank*, 38 S.W.3d 265, 285 (Tex. App.--Dallas 2001), rev'd in part, 96 S.W.3d 240 (Tex. 2002)). Plaintiff responds that "AmTTech's conspiracy claims against it [Ellison] are based on a series of secret communications and undertakings, many of which are specifically described in AmTTech's Complaint and the evidence supporting AmTTech's Request for Preliminary Injunction and others of which continue to come to light as this case moves forward" (Document No. 27 at 6). However, even if Plaintiff can demonstrate the occurrence of these secret communications and undertakings, the conspiracy still mainly resulted in a breach of contract, likely not actionable under Texas law. Therefore Plaintiff is unlikely to succeed on this claim.

(Document No. 28 at 11-12). This prior reasoning stands. Furthermore, Plaintiff has not even alleged a breach of contract, as noted above, and Plaintiff does not defend this claim in its response.[7] Therefore Doosan is entitled to judgment on the pleadings.

---

[6] AmTTech did not respond to Doosan's arguments regarding any claims other than those under the Act. (Document No. 58). "In accordance with Local Rule 7.4, the court takes plaintiff's failure to respond to the defendant's motion to dismiss as a representation of no opposition to the legal arguments and factual evidence submitted by the defendant in support of the pending motion." *Blanton-Bey v. Carrell*, No. H-09-3697, 2010 WL 1337740, at *1 (S.D. Tex. Mar. 26, 2010) (citation omitted).

[7] "Civil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort. That is, a defendant's

(4) Deceptive Trade Practices Act (DTPA) violations

Doosan asks for judgment on the pleadings on this claim, as the Court "found that the termination or suspension of a distributorship agreement – like here – does not result in a cause of action under the DTPA." (Document No. 55 at 7). The relevant portion of the Court's prior opinion is as follows:

> Plaintiff generally alleges that it relied on the statements and actions of Doosan in assuming that their relationship would continue, but Doosan knew of its plan to terminate the Agreement for months before telling AmTTech. *Id*. [Document No. 1-3] at 8. Doosan argues in response that AmTTech does not qualify as a consumer under the DTPA, and that "AmTTech's complaint is based solely on the termination of its distributorship and not with any fault in the goods DIA supplied" (Document No. 25 at 15). Under the DTPA, "'Consumer' means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." Tex. Bus. & Com. Code Ann. § 17.45 (West). In order to maintain a claim under the DTPA, a plaintiff must be a consumer. *Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 643 (W.D. Tex. 2013) ("The elements of a DTPA claim are (1) the plaintiff is a consumer; (2) the defendant committed a false, misleading, or deceptive act; and (3) the act caused the consumer's damages."). Plaintiff argues it is a consumer under the DTPA, because DTPA liability "is imposed where the defendant's conduct has occurred 'in connection with' a consumer transaction," "a person need not seek or acquire goods or services furnished by the defendant to be a consumer as defined in the DTPA," and the DTPA should be given "its most comprehensive application possible without doing any violence to its terms" (Document No. 26 at 11) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 541 (Tex. 1981) (finding that purchasers of a house were consumers under the DTPA)).
> Doosan, however, cites a case more on point, in which a distributor asserted a DTPA claim against a supplier "based on suspension of the distributorship," and the court found that the cause of action did "not properly come under the DTPA." (Document No. 25 at 15) (citing *Americom Distrib. Corp. v. ACS Commc'ns, Inc.*, 990 F.2d 223, 227 (5th Cir. 1993)). *See also Footloose, Inc. v. Stride Rite Children's Grp., Inc.*, 923 F. Supp. 114, 117 (N.D. Tex. 1995) (granting summary judgment for defendant regarding a DTPA claim where plaintiff merely claimed that defendant supplier discontinued selling to plaintiff). Due to this case law, it is unlikely that Plaintiff will succeed in its DTPA claim against Doosan.

---

liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (citing *Carroll v. Timmers Chevrolet, Inc.,* 592 S.W.2d 922, 925 (Tex. 1979)). Plaintiff has not alleged the commission of any other torts by Defendant Doosan, and therefore this claim has no other possible basis in the pleadings.

(Document No. 28 at 13-14).[8] This case law demonstrates that Plaintiff's claim fails, and Plaintiff does not oppose this argument in its response. For these reasons, Doosan is entitled to judgment on the pleadings.

(5) Declaratory Judgment

AmTTech requests "this Court to declare that Doosan's August 21, 2015 notice of termination is null and void, as Doosan failed to provide the requisite 90-day notice under Texas Business and Commerce Code § 57.204, failed to provide good cause required under § 57.202, and substantially changed the Agreement in further violation of the Act." (Document No. 1-3 at 19). Because the Act does not apply, Doosan is entitled to judgment on the pleadings for this claim.

*Claims against Ellison*

(1) Civil conspiracy

Ellison similarly asks the Court to grant judgment on the pleadings for this claim, due to the Court's prior holding. Plaintiff does not defend this claim in its response to Ellison's motion. (Document No. 57). For this reason, and the reasons discussed above, Ellison is also entitled to judgment on the pleadings for this claim.[9]

(2) Tortious interference with an existing contract

Ellison argues that AmTTech's tortious interference claim fails because the Agreement

---

[8] Additional case law explains that "[t]he goods themselves must form the basis of the complaint." *Malone v. E.I. du Pont de Nemours & Co.*, 8 S.W.3d 710, 715 (Tex. App.-Fort Worth 1999, pet. denied) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981)). "In other words, a DTPA plaintiff whose claim is not based on any fault in the goods, but merely complains of the seller's failure to sell as much as the plaintiff wanted to buy, is not a consumer." *Id*. (citing *Americom Distrib. Corp. v. ACS Communications, Inc.,* 990 F.2d 223, 227 (5th Cir. 1993); *Footloose, Inc. v. Stride Rite Children's Group, Inc.,* 923 F.Supp. 114, 116–17 (N.D.Tex. 1995)). Here Plaintiff's complaint clearly does not relate to any problem with the goods, but relates to the suspension of the distributorship. *See also Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) (affirming grant of summary judgment for defendant on DTPA claim where plaintiff alleged that defendant "wrongfully *suspended* its billing and collection services," but did not "claim that it encountered problems with the quality of the billing and collection services themselves").

[9] Although Plaintiff has alleged a tort against Ellison, tortious interference with an existing contract, the failure of that claim also precludes the civil conspiracy claim. *See* fn. 4, *supra*.

was not breached. (Document No. 54 at 6). As discussed in the Court's previous opinion:

> Plaintiff alleges that "Ellison knew Doosan and AmTTech had a longstanding, successful exclusive distributorship contract under which AmTTech pioneered and developed the Doosan brand name in Texas. It willfully and intentionally interfered with that contract by conspiring with Doosan to terminate AmTTech's contract with DIA" (Document No. 1-3 at 20). "To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss." *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). Ellison, however, notes that "merely inducing a contract obligor to do what it has a right to do is not actionable interference." *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). As described above, Doosan had a right to terminate the Agreement with 30 days' notice; therefore Ellison could not have tortiously interfered with the Agreement.

(Document No. 28 at 14). Under *ACS Investors*, Ellison cannot be liable to AmTTech for merely inducing Doosan to do something it had a right to do: terminate the Agreement for any reason with 30 days' notice. Courts have noted that this is the general rule: "[m]ost courts hold that to prevail on a claim for tortious interference with contract, the plaintiff must show the interference induced an actual breach of the contract." *Ana Sophia SPENCER & William Alex Spencer, Appellant v. Jennifer OVERPECK, Appellee*, No. 04-16-00565-CV, 2017 WL 993093, at *5 (Tex. App. – San Antonio Mar. 15, 2017) (citing *ACS Inv'rs*, 943 S.W.2d at 430; *Serafine v. Blunt*, 466 S.W.3d 352, 362 (Tex. App.—Austin 2015, no pet.); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App.—Fort Worth 2009, pet. denied)); *see also Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F.Supp.2d 598, 674–75 (S.D. Tex. 2010); *Funes v. Villatoro,* 352 S.W.3d 200, 213 (Tex.App.-Houston [14th Dist.] 2011, no pet.); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.,* 416 S.W.3d 71, 87 (Tex. App.-Houston [1st Dist.] 2013, pet. denied).[10]

---

[10] Most notably, a recent case in this Court came to the same conclusion when addressing a contract with a termination provision very similar to the termination provision in the Agreement. *PrinterOn Inc. v. BreezyPrint Corp.*, 93 F. Supp. 3d 658, 706–07 (S.D. Tex. 2015) ("For a plaintiff to maintain a tortious interference claim, it must produce some evidence that the defendant knowingly induced one of the contracting parties to breach its

In response, AmTTech cites another line of cases for the opposite proposition: "[t]o establish tortious interference with [an] existing contract, a plaintiff is not limited to showing the contract was actually breached." *Lamont v. Vaquillas Energy Lopeno Ltd., LLP*, 421 S.W.3d 198, 216 (Tex. App. 2013) (citing *Khan v. GBAK Props., Inc.,* 371 S.W.3d 347, 359–60 (Tex.App.-Houston [1st Dist.] 2012, no pet.); *Hughes v. Hous. Nw. Med. Ctr., Inc.,* 680 S.W.2d 838, 842 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.)). Under this reasoning, "[a]ny interference that makes performance more burdensome or difficult or of less or no value to the one entitled to performance is actionable." *Id.* Ellison argues in reply that AmTTech was not "entitled to performance," and thus AmTTech's argument fails. (Document No. 60 at 3). The Court agrees; AmTTech was not entitled to performance, because Doosan had the right to terminate the Agreement with 30 days' notice for any reason. The only argument that AmTTech was entitled to performance would be based upon the Act, not upon the Agreement itself. Because the Court already determined that the Act is not applicable, this claim also fails. Ellison is entitled to judgment on the pleadings for this claim.

**Conclusion**

As explained above, Defendants are entitled to judgment on the pleadings for each of Plaintiff's claims. However, Doosan's counterclaim against AmTTech remains pending. (*See* Document No. 9 at 18; fn. 3, *supra*). Therefore the Court hereby

ORDERS that Defendants' Motions for Judgment on the Pleadings (Document Nos. 54. 55) are GRANTED. All of Plaintiff's claims are DISMISSED.

---

obligations under the contract.") (citing *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App.—Fort Worth 2009, pet. denied)). The contract at issue included a "'Termination for Convenience' provision, which allowed 'either party' to 'terminate this Agreement at any time by providing the other party with at least thirty (30) days' prior written notice of such election to terminate.'" *Id*. at 707. Because proper notice of termination was given the contract was not breached, and thus summary judgment was granted in favor of PrinterOn (the counterclaim defendant accused of tortious interference with an existing contract). *Id*. at 707-08.

SIGNED at Houston, Texas, this 19th day of April, 2017.

                                              MELINDA HARMON
                                     UNITED STATES DISTRICT JUDGE